

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Dana Sussman
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ARTURO REYES, DANIEL MERINO, and JOSE ARENAS**, on behalf of themselves and all others similarly situated,<br><br>**Plaintiffs,**<br><br>-against-<br><br>**ALTAMAREA GROUP, LLC, ALTO 53, LLC d/b/a ALTO and CHRIS CANNON,**<br><br>**Defendants.** | **No. 10-CV-6451 (RMB) (RLE)**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs, Arturo Reyes, Daniel Merino, and Jose Arenas (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

1.      This lawsuit seeks to recover misappropriated tips, minimum wages, spread-of-hours pay, and uniform-related expenses for Plaintiffs and similarly situated hourly food service workers, including, but not limited to, assistants (servers), captains, bussers, and runners, who work or worked at Alto, an upscale Italian restaurant, located at 11 East 53rd Street in New York City.

2.      Alto, along with several other restaurants, including Marea and Convivio, are

owned and/or operated by restaurateur Chris Cannon and chef Michael White.  Since 2006, when Cannon asked White to take over the kitchens of Alto and Convivio (then called L'Impero), the two (with the financial backing of Ahmass Fakahany, CEO of Altamarea Group, LLC) have swiftly built an empire of high-end Italian restaurants that will soon expand to include two new restaurants, Osteria Morini and Ai Fiori.

3.       In addition to earning critical acclaim, including glowing reviews in The New York Times, the restaurants have earned millions.  Marea, which opened in 2009 with a $6 million investment from Fakahany, reportedly grossed $13.5 million in its first year, notwithstanding the recession.  Altamarea Group, LLC ("Altamarea"), the corporate umbrella for the restaurants, reportedly grossed $28 million last year alone and is planning to expand further. In a *Crain*'s profile this year,[1] White predicted that Altamarea "will be a $100 million company" within the next five years.

4.       This lawsuit alleges that, despite their great success, Cannon and White built their empire on the backs of their waitstaff, by requiring them to share their hard-earned tips with tip ineligible workers, including, but not limited to, the General Manager and head sommelier of Alto, unlawfully taking a tip credit and paying less than the full minimum wage, denying the waitstaff spread-of-hours pay, and requiring them to purchase and launder required uniforms.

5.       Plaintiffs bring this action as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiffs and others similarly situated of their lawfully earned wages.

---

[1]       http://mycrains.crainsnewyork.com/40under40/profiles/2010/10201

6.      Plaintiffs also bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 to remedy Defendants' violations of the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations.

## THE PARTIES

### Plaintiffs

#### Arturo Reyes

7.      Plaintiff Reyes is an adult individual who is a resident of Queens, New York.

8.      Reyes has been employed by Defendants as an assistant, an hourly food service worker, at Alto from approximately June 2009 through the present.

9.      Reyes is a covered employee within the meaning of the FLSA and NYLL.

10.     Reyes has filed a written consent to join this action.

#### Daniel Merino

11.     Plaintiff Merino is an adult individual who is a resident of Queens, New York.

12.     Merino has been employed by Defendants as a busser, an hourly food service worker, from approximately November 2007 through the present.

13.     Merino is a covered employee within the meaning of the FLSA and NYLL.

14.     Merino has filed a written consent to join this action.

#### Jose Arenas

15.     Plaintiff Arenas is an adult individual who is a resident of New York, New York.

16.     Arenas has been employed by Defendants as a runner, an hourly food service worker, at Alto from approximately April 2005 through the present.

17.     Arenas is a covered employee within the meaning of the FLSA and NYLL.

18.     Arenas has filed a written consent to join this action.

**Defendants**

19.     Defendants Altamarea, Alto 53, LLC, and Chris Cannon operate as part of a single integrated enterprise that employed and/or jointly employed Plaintiffs and similarly situated employees at times relevant to this case.  Defendants' operations are interrelated and unified.

20.     Each Defendant has had substantial control over aspects of labor relations, Plaintiffs' working conditions, and the unlawful policies and practices alleged herein at times relevant to this lawsuit.

21.     During relevant times, Defendants have been Plaintiffs' employers and/or joint employers within the meaning of the FLSA and NYLL.

22.     Cannon is the CEO of Alto 53, LLC, and is the Operating Partner and Owner of Alto, Convivio, and Marea restaurants.

23.     A single website connects all of the restaurants owned by Cannon, including Marea, Convivio, Alto, Due Mari, and Due Terre, under the corporate umbrella of Altamarea. *See* http://altamareagroup.com.  Under the names of all of the restaurants, the Altamarea website lists the address:  415 W. Broadway.

24.     The Marea website refers to Alto and Convivio as its "sister" restaurants.[2]  The Alto website provides links to the websites for Marea and Convivio.[3]

25.     The Alto website also includes a page promoting the Altamarea restaurants, Alto, Convivio, and Marea.  It touts the restaurants' ratings from The New York Times, Zagat, Michelin, and Wine Spectator.  The top of the ad reads, "Take a cab to dinner in Italy and save a

---

[2]     http://www.marea-nyc.com/links.html
[3]     http://www.altorestaurant.com/links.html

bundle on airfare," above the Altamarea logo and its slogan, "Traditional Taste, Convivial Style." It also promotes "[o]ur New Jersey Restaurants, Due Terre (Bernardsville), [and] Due Mari (New Brunswick).[4]

26.     Alto uses a company called Bullfrog & Baum to handle its press inquiries.[5] Marea[6] and Convivio[7] use the same company.

27.     Altamarea filed the names, "Altamarea" and "Altamarea Group," with the United States Patent and Trademark Office. Altamarea is represented by Meister Seelig & Fein LLP in connection with its trademark applications. Meister Seelig & Fein LLP also represents Alto, Altamarea, and Cannon in this lawsuit.

28.     Altamarea and Alto share office facilities. The central office for all of Cannon's restaurants, including Alto, is an office located at 415 W. Broadway in New York City.

29.     The office at 415 W. Broadway is rented by, owned by, and/or otherwise under the control of Altamarea.

30.     Fakahany accepts service of process on behalf of Altamarea at 415 W. Broadway. Three other entities, Altamarea Intellectual Property, LLC; Altamarea Management, LLC; and Altamarea Services & Administration, LLC also accept service through Fakahany at 415 W. Broadway. Cannon accepts service for another Altamarea entity, Altamarea LLC, at 240 Central Park South in New York City. 240 Central Park South is also the address of Marea.

31.     Fakahany's money also ties the Defendants together. Upon information and belief, Fakahany has provided funding for at least three of Altamarea's restaurants, including Alto. Mr. White told The New York Times that Fakahany's entry into his career was like "being

---

[4]     http://altorestaurant.com/pdfs/SPR_S09.pdf  (at page 13)
[5]     http://www.altorestaurant.com/contact.html
[6]     http://www.marea-nyc.com/pdfs/NYPost%206_3_09.pdf
[7]     http://www.convivionyc.com/contact.html

struck by lightning." Fakahany told the paper that his goal is to help Mr. White "fulfill his full potential," which he "hasn't begun to tap."[8]

32.    In a recent article, *Crain's* reported that, "Over the past three years, [Fakahany] has funded five fine-dining Italian restaurants—among them Convivio, Alto, and Marea, all in midtown—where Mr. White is the executive chef and a partner, along with veteran restaurateur Chris Cannon.[9]

**Altamarea**

33.    Altamarea is a domestic limited liability company organized and existing under the laws of New York.

34.    Altamarea's principal executive office is located at 415 W. Broadway in New York City.

35.    Altamarea is the corporate umbrella for the restaurants owned by Cannon, including Alto, Marea, and Convivio.

36.    Together with the other Defendants, Altamarea or its owners has owned and/or operated Alto during at least part of the relevant period.

37.    Upon information and belief, Cannon and White are owners of Alto and Altamarea, as well as other restaurants under the Altamarea umbrella. Upon information and belief, Fakahany has invested in Altamarea, Alto, and other restaurants under the Altamarea umbrella. Cannon has management authority over Altamarea and Alto.

38.    The restaurants under Altmarea's corporate umbrella share and/or have shared employees, including Levi Dalton, currently the head sommelier at Alto and formerly a sommelier at Convivio.

---

[8]    http://www.nytimes.com/2010/08/25/dining/25White.html?_r=1
[9]    http://mycrains.crainsnewyork.com/40under40/profiles/2010/10201

39.    Heather Bertinetti is the pastry chef at Alto, Marea, and Convivio.[10]

40.    Upon information and belief, Eben Freeman ("Freeman") is the director of bar operations and innovations for all of the Altamarea restaurants. Freeman is responsible for training the bartenders and accompanying bar staff at each of Altamarea's restaurants. He works with White to concoct what Altamarea CEO/owner Ahmass Fakahany describes as "new tastes and new ideas."[11]

41.    Altamarea employs an accountant and/or bookkeeper to maintain the financial records for all of the restaurants under its corporate umbrella, including Alto.

42.    Altamarea performs human resources functions for Alto and Cannon's other restaurants. Altamarea has had the power to put in place employee policies at Alto. For example, Altamarea recently promulgated a policy at Alto prohibiting sexual harassment of employees. In addition, Altamarea recently instituted a new policy at Alto regarding employee discounts at other Cannon restaurants, including Marea and Convivio.

43.    Altamarea accepts job applications for all of the Altamarea restaurants at jobs@altamareagroup.com.[12]

44.    Altamarea recently advertised job openings at its new Ai Fiori restaurant (where White is the executive chef) on Craigslist.com, instructing applicants to send employment inquiries to jobs@altamareagroup.com. The Craigslist ad also states, "The Altamarea Group is an award-winning restaurant group featuring acclaimed chef, Michael White. Our restaurants have earned James Beard awards, NYT 3-star reviews as well as Michelin recognition and include Marea, Convivio, and Alto." It also highlights the corporate culture shared by the

---

[10]    http://altorestaurant.com/pdfs/SPR_S09.pdf (at page 10)
[11]    http://blogs.villagevoice.com/forkintheroad/2010/09/eben_freeman_ha.php
[12]    http://www.altamareagroup.com/

Altamarea restaurants: "We selectively look for individuals who have an entrepreneurial spirit and who value the unrelenting pursuit of excellence along with a deep appreciation for food, wine and hospitality."[13]

45.     Upon information and belief, Altamarea administers benefits for workers at the Altamarea restaurants.  Its Craigslist ad states, "We offer medical and dental benefits after 90 days of employment."[14]

46.     At relevant times, Altamarea has had the power to stop any illegal practices that harmed Plaintiffs.

47.     Altamarea is a covered employer within the meaning of the FLSA and NYLL, and at relevant times, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.  Altamarea is also part of a single integrated enterprise that employed Plaintiffs and similarly situated employees.

48.     At all times relevant, Altamarea's annual gross volume of sales made or business done was not less than $500,000.00.

**Alto 53, LLC**

49.     Together with Defendants Altamarea and Chris Cannon, Alto 53, LLC ("Alto 53") has owned and/or operated Alto during the relevant period.

50.     Alto 53 is a domestic business corporation organized and existing under the laws of New York.

51.     Alto 53's principal executive office is located in New York City.

52.     Alto 53 is a covered employer within the meaning of the FLSA and NYLL, and,

---

13      http://newyork.craigslist.org/mnh/fbh/2014705162.html
14      http://newyork.craigslist.org/mnh/fbh/2014705162.html

at all times relevant, employed Plaintiffs and/or jointly employed Plaintiffs and similarly situated employees.

53.     Alto 53 is the entity named on Plaintiffs' paystubs.

54.     Upon information and belief, at all times relevant, Alto 53's annual gross volume of sales made or business done was not less than $500,000.00.

**Chris Cannon**

55.     Upon information and belief, Defendant Chris Cannon ("Cannon") is a resident of New Jersey.

56.     At all relevant times, Cannon has owned and/or operated Alto.

57.     Cannon and White control Altamarea.

58.     At all times relevant, Cannon has had power over personnel decisions at Alto.

59.     At all times relevant, Cannon has had the power to hire and fire employees at Alto.

60.     In or around May 2010, Cannon re-hired Plaintiff Reyes after Reyes was fired by a manager at Alto.

61.     Cannon also increased Reyes' scheduled shifts in response to his complaint that he had not been given enough shifts.

62.     At all times relevant, Cannon has had the power to set employee wages and make compensation decisions at Alto.

63.     Cannon admitted to being responsible for Alto's tip allocation policy and told Plaintiff Reyes that he would change it.  At a meeting with Plaintiff Reyes, Cannon stated that he had instituted Alto's tip allocation policy when the restaurant was called L'Impero.

64.     Cannon stated that he was aware that the tip allocation policy was unlawful.

65.     Cannon is actively involved in managing day to day operations at Alto.

66.     Cannon is present at Alto several days a week, during which time he interacts with staff and customers, selects wine for the menu, and sets policies in consultation with managers.

67.     At all times relevant, Cannon has had the power to stop illegal pay practices that harmed Plaintiffs.

68.     Cannon is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

## JURISDICTION AND VENUE

69.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

70.     Plaintiffs' state law claims are so closely related to their claims under the Fair Labor Standards Act that they form part of the same case or controversy under Article III of the United States Constitution.

71.     This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

72.     At least one member of the proposed class is a citizen of a state different from that of at least one Defendant.

73.     Upon information and belief, all Defendants are subject to personal jurisdiction in New York.

74.     Upon information and belief, the amount in controversy in this matter exceeds the sum or value of $5,000,000.00, exclusive of interest and costs.

75.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

76.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b)(2) because the events or omissions giving rise to the claims occurred in this district.

## COLLECTIVE ACTION ALLEGATIONS

77.    Plaintiffs bring the First Cause of Action, FLSA claim, on behalf of themselves and all similarly situated hourly food service workers, including, but not limited to, assistants, captains, bussers, and runners who work or worked at Alto and who elect to opt-in to this action (the "FLSA Collective").

78.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs.  Upon information and belief, there are many similarly situated current and former employees of Defendants who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.  Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

79.    Plaintiffs bring the Second, Third, and Fourth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All hourly food service workers, including assistants, captains, bussers, and runners who work or have worked at Alto between August 30, 2004 and the date of final judgment (the "Rule 23 Class").

80.    Excluded from the Rule 23 Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to

whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the New York Class.

81.     The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

82.     The size of the Rule 23 Class is at least 100 individuals.  Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

83.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

84.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)     Whether Defendants violated NYLL Article 6, §§ 190 *et seq.,* and Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 137, as alleged herein;

(b)     Whether Defendants misappropriated tips from Plaintiffs and the Rule 23 Class by demanding, handling, pooling, counting, distributing, accepting and/or retaining tips voluntarily paid by customers;

(c)     Whether Defendants distributed a portion of the tips paid by its customers to workers who are not entitled to receive tips under the NYLL;

(d)     Whether Defendants failed to provide Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

(e)     Whether Defendants made unlawful deductions from the wages of Plaintiffs and the Rule 23 Class by failing to pay Plaintiffs and Rule 23 Class for required uniforms and uniform-related expenses;

(f)    Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(g)    The nature and extent of class-wide injury and the measure of damages for those injuries.

85.    The claims of Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and all the Rule 23 Class members work, or have worked, for Defendants as hourly food service employees at Alto. Plaintiffs and the Rule 23 Class members enjoy the same statutory rights under the NYLL to retain all of the tips they earn, to be paid spread-of-hours pay, tips, and to be reimbursed for required uniforms and compensations for uniform-related expenses. Plaintiffs and Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL. Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

86.    Plaintiffs will fairly and adequately represent and protect the interests of the Rule 23 Class members. Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between the Plaintiffs and the Rule 23 Class members.

87.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violation of the NYLL as well as their common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual Plaintiffs lack the financial resources to conduct a thorough examination of Defendants' compensation practices

and to prosecute vigorously a lawsuit against Defendants to recover such damages.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

88.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

89.     Defendants' violations of the law have been willful and intentional.

90.     In or around May 2010, Plaintiff Reyes complained to Defendant Cannon that the distribution of tips to the General Manager and to other tip ineligible workers was unlawful.

91.     In response, Defendant Cannon acknowledged that he knew the distribution scheme was unlawful, but told Reyes that, if he had a problem with it, he should file a lawsuit.

92.     In a letter dated October 19, 2010, counsel for the Defendants asserted that after Cannon received Plaintiff Reyes' complaint, Alto changed its tip distribution policy.

93.     However, Alto still requires Plaintiffs and their co-workers to share tips with tip-ineligible employees, including but not limited to the head sommelier, Levi Dalton, who has the authority to hire and fire.

## PLAINTIFFS' FACTUAL ALLEGATIONS

94.     Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs individually as follows:

**Arturo Reyes**

95.     Defendants failed to inform Reyes of the provisions of subsection 203(m) of the FLSA, 29 U.S.C. § 203(m).

96.    Defendants distributed approximately 4% of the tips that Reyes and other tipped workers earned each shift to tip ineligible workers, including, but not limited to, the General Manager, Patrick Garrivier, and the head sommelier, Levi Dalton.

97.    Defendants unlawfully took advantage of the FLSA's tip credit provision and failed to pay Reyes at the proper minimum wage rate for the hours that he was suffered or permitted to work each workweek.

98.    Defendants failed to pay Reyes spread-of-hours pay at the minimum wage rate when he worked days of more than ten hours.

99.    Defendants failed to reimburse Reyes for the jacket that they required him to wear and did not provide him with statutory weekly compensation for the maintenance of such uniform.

**Daniel Merino**

100.    Defendants failed to inform Merino of the provisions of subsection 203(m) of the FLSA, 29 U.S.C. § 203(m).

101.    Defendants distributed approximately 4% of the tips that Merino and other tipped workers earned each shift to tip ineligible workers, including, but not limited to, the General Manager, Patrick Garrivier, and the head sommelier, Levi Dalton.

102.    Defendants unlawfully took advantage of the FLSA's tip credit provision and failed to pay Merino at the proper minimum wage rate for the hours that he was suffered or permitted to work each workweek.

103.    Defendants failed to pay Merino spread-of-hours pay at the minimum wage rate when he worked days of more than ten hours.

104.    Defendants failed to reimburse Merino for the jacket that they required him to wear and did not provide him with statutory weekly compensation for the maintenance of such uniform.

**Jose Arenas**

105.    Defendants failed to inform Arenas of the provisions of subsection 203(m) of the FLSA, 29 U.S.C. § 203(m).

106.    Defendants distributed approximately 4% of the tips that Arenas and other tipped workers earned each shift to tip ineligible workers, including, but not limited to, the General Manager, Patrick Garrivier, and the head sommelier, Levi Dalton.

107.    Defendants unlawfully took advantage of the FLSA's tip credit provision and failed to pay Arenas at the proper minimum wage rate for the hours that he was suffered or permitted to work each workweek.

108.    Defendants failed to pay Arenas spread-of-hours pay at the minimum wage rate when he worked days of more than ten hours.

109.    Defendants failed to reimburse Arenas for the jacket that they required him to wear and did not provide him with statutory weekly compensation for the maintenance of such uniform.

## FIRST CAUSE OF ACTION

### Fair Labor Standards Act – Minimum Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

110.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

111.    Defendants failed to pay Plaintiffs and the members of the FLSA Collective the minimum wages to which they are entitled under the FLSA.

112.   Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this First Amended Class Action Complaint.

113.   At all times relevant, Plaintiffs and the members of the FLSA Collective were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m) and 206(a).

114.   At all times relevant, Plaintiffs and the members of the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 203(e), (m) and 206(a).

115.   At all times relevant, Defendants have been employers and/or joint employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

116.   Defendants were required to pay directly to Plaintiffs and the members of the FLSA Collective the full minimum wage rate for all hours worked.

117.   Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 203(m), and supporting federal regulations, including but not limited to 29 C.F.R. § 531.50 *et seq.*, because Defendants failed to inform Plaintiffs and the members of the FLSA Collective of the provisions of subsection 203(m) of the FLSA, 29 U.S.C. § 203(m) and distributed a portion of their tips to workers who do not "customarily and regularly" receive tips including, but not limited to, the managers and the head sommelier.

118.   The managers and the head sommelier have the authority to hire and fire and perform other managerial tasks in the restaurant.

119.   For example, Patrick Garrivier ("Garrivier"), the General Manager, hired Reyes and fired Reyes.

120.   Garrivier fired bussers named Martin, Luis, and Juan-Carlos.

121.    Garrivier hired Plaintiff Merino.

122.    Levi Dalton ("Dalton"), the head sommelier hired assistant sommeliers.

123.    Managers discipline workers.  An assistant manager, Tara, suspended Reyes and sent him home.

124.    Managers enter customer tips into spreadsheets and allocate tips to service employees.  They also hold the tips until they are distributed in employees' paychecks.

125.    Managers, including Garrivier, create work schedules and make changes to them. Dalton also creates work schedules.

126.    Managers organize and run mandatory meetings for service workers at which they discuss customer complaints and assign service workers to certain sections of the floor.

127.    Managers and sommeliers are paid on a salary basis.

128.    Upon information and belief, Defendants failed to post and keep posted in a conspicuous place on their premises a notice explaining the FLSA, as prescribed by the Wage and Hour Division of the U.S. Department of Labor, in violation of the FLSA, 29 U.S.C. § 203(m) and supporting federal regulations, including but not limited to 29 C.F.R. § 516.4.

129.    As a result of Defendants' violations of the FLSA, Plaintiffs and the members of the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

130.    Defendants' unlawful conduct, as described in this First Amended Class Action Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in this First Amended Class Action Complaint were unlawful.

Among other things, the prevalence of wage and hour lawsuits against restaurants in New York City put all major restaurant owners on notice that sharing tips with tip-ineligible workers violated the law, especially a restaurant like Alto, that is part of a well-established restaurant group. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

131.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**SECOND CAUSE OF ACTION**

**New York Labor Law Article 6 – Unlawful Tip Retention**
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

132.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

133.    At all times relevant, Plaintiffs and the members of the Rule 23 Class have been employees within the meaning of NYLL §§ 190, *et seq.*, and any supporting New York State Department of Labor regulations.

134.    At all times relevant, Defendants have been an employer within the meaning of NYLL §§ 190, *et seq.*, and any supporting New York State Department of Labor regulations.

135.    At all times relevant, each Defendant has been an employer, agent, and/or an officer within the meaning of NYLL § 196-d and any supporting New York State Department of Labor regulations.

136.    The wage payment provisions of Article 6 of the NYLL and any supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiffs and the members of the New York Class.

137.    Defendants violated NYLL Article 6, § 196-d by unlawfully demanding, collecting, receiving, retaining, pooling, handling, counting, and holding tips paid by customers and distributing a portion of such tips to workers who are not entitled to tips under the NYLL including, but not limited to, managers and the head sommelier.

138.    Due to Defendants' violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION

**New York Labor Law – Spread-of-Hours**
**(Brought on behalf of all Plaintiffs and the members of the Rule 23 Class)**

139.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

140.    Defendants have willfully failed to pay Plaintiffs and the Rule 23 Class Members additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked more than 10 hours.

141.    By Defendants' failure to pay Plaintiffs and the Rule 23 Class Members spread-of-hours pay, Defendants have willfully violated the NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations.

142.    Due to Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants their wages, liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### FOURTH CAUSE OF ACTION

**New York Labor Law – Uniform Violations**
**(Brought on behalf of all Plaintiffs and the Rule 23 Class)**

143.    Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

144.    Defendants failed to pay the Plaintiffs and the members of the Rule 23 Class the full amount of their wages as a result of deductions for uniform-related expenses in violation of NYLL Article 6, § 193 and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. § 137-2.5.

145.    Defendants required Plaintiffs and the Rule 23 Class to purchase required uniforms and failed to reimburse them for the cost of such required uniforms.

146.    The uniforms included black or gray jackets that were not suitable as part of service employees' everyday wardrobes – they were specific to the restaurant.

147.    Defendants also failed to launder or maintain the uniforms that they required Plaintiffs and the Rule 23 Class Members to wear and failed to pay them the required weekly amount for such laundering and maintenance.

148.    Due to Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class Members are entitled to recover from Defendants the costs of the required uniforms, their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, seek the following relief:

A.      That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by

Defendants as hourly food service workers, including assistants, captains, runners, and bussers, at Alto. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

  B.  Unpaid minimum wages and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

  C.  Unpaid spread-of-hours pay, misappropriated tips, and uniform-related pay pursuant to NYLL Article 6, §§ 190 *et seq.* and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations;

  D.  Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

  E.  Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

  F.  Pre-judgment interest and post-judgment interest;

  G.  An injunction requiring Defendants to pay all statutorily required wages pursuant to the NYLL;

  H.  Reasonable attorneys' fees and costs of the action;

  I.  Such other relief as this Court shall deem just and proper.


Dated: October 25, 2010
   New York, New York


           Respectfully submitted,


           *Rachel Bien*
           Rachel Bien

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Dana Sussman
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

*Attorneys for Plaintiffs and*
*the putative Class and Collective*